UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

AURELIO FLORES MORENO and LUCINO
MORALES VICTORIA,

        Plaintiffs,

  -v-                                          No.  17 CV 9439-LTS-KNF

JULIAN RAMOS and 153 J AND J FOOD
MARKET CORP. *doing business as* JJ FOOD
MARKET,

        Defendants.

-------------------------------------------------------x

## MEMORANDUM ORDER

In this action brought against defendants Julian Ramos and 153 J and J Food Market Corp. ("153 J and J Food" and, together with Mr. Ramos, "Defendants"), plaintiffs Aurelio Flores Moreno and Lucino Morales Victoria ("Plaintiffs") assert claims for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., the New York State Labor Law ("NYLL") §§ 190, 650 et seq., and the New York Codes, Rules, and Regulations ("NYCRR") Title 12 § 146-1.6, arising out of their employment at a business called JJ Food Market ("the Market") from June 2010 (in the case of Plaintiff Morales Victoria) and March 2012 (in the case of Plaintiff Flores Moreno) through September 2016.  During that period, the Market was owned by JJ Food Market Corp. (against which the Court entered a default judgment in favor of Plaintiffs on November 26, 2019, see Docket Entry No. 42), which transferred control of the Market to 153 J and J Food on or about October 21, 2016.

Plaintiffs move for summary judgment on two elements of their wage and hour claims against Defendants: Defendant Ramos's qualification as Plaintiffs' "employer" for

purposes of the FLSA and NYLL, and Defendant 153 J and J Food's liability to Plaintiffs for the obligations of JJ Food Market Corp., as that entity's successor-in-interest.[1] The Court has subject matter jurisdiction of Plaintiffs' FLSA claims pursuant to 28 U.S.C. section 1331 and 29 U.S.C. section 216(b) and supplemental jurisdiction of their NYLL and NYCRR claims pursuant to 28 U.S.C. section 1367(a).

The Court has considered the submissions of both parties carefully and, for the following reasons, denies Plaintiffs' motion.

BACKGROUND[2]

Plaintiff Flores Moreno was employed at the Market as a deli worker, and Plaintiff Morales Victoria was employed there as a cashier. (Amended Complaint (Docket Entry No. 45) ¶¶ 32, 53.) Plaintiffs claim that they worked from approximately 2:00 p.m. to 12:15 a.m. six or seven days per week (id. ¶¶ 36, 57), but were paid fixed weekly salaries (ranging from $450 to $750), in cash, regardless of their hours worked, and were not given meal breaks, rest periods, or wage notices or statements (id. ¶¶ 38-50, 58-69), all in violation of relevant provisions of the FLSA, NYLL, and NYCRR.

---

[1] Plaintiffs style their motion as a "Motion for Summary Judgment," and seek "summary judgment against all Defendants" (Docket Entry No. 73), but address only these two discrete issues in their memorandum of law (Docket Entry No. 74) and S.D.N.Y. Local Civil Rule 56.1 Statement (Docket Entry No. 76 ("Pl. 56.1 St.")).

[2] The material facts recited herein are undisputed unless otherwise indicated. Facts recited as undisputed are identified as such in the parties' statements pursuant to Local Civil Rule 56.1, or drawn from evidence as to which there is no non-conclusory contrary factual proffer. Citations to the parties' Local Civil Rule 56.1 Statements incorporate by reference the parties' citations to underlying evidentiary submissions. The Court cites, for background purposes only, facts alleged in Plaintiffs' Amended Complaint, to the extent such facts are not addressed in the parties' summary judgment papers.

Defendant Ramos worked at the Market as well, and was married to its owner, Maida Luna. (Pl. 56.1 St. ¶¶ 29, 33; Deposition of Julian Ramos dated September 23, 2019 ("Ramos Dep.") (Docket Entry No. 75-5) at 15:4-19; Declaration of Julian Ramos dated October 26, 2020 ("Ramos Decl.") (Docket Entry No. 88) ¶¶ 2, 15.) Mr. Ramos worked six days per week, from 7:00 a.m. to 2:00 p.m., before Plaintiffs began their shifts. (Pl. 56.1 St. ¶ 29.) However, he was physically present when Plaintiffs received their work schedules and were told their rates of pay (id. ¶ 34), and he transmitted work orders from Ms. Luna to other employees. (Id. ¶ 32; Ramos Dep. at 26:2-11.) Mr. Ramos was also the individual who met and hired Plaintiff Flores Moreno (id. ¶ 30)—an action Mr. Ramos claims he took only after Mr. Flores Moreno had spoken "with the owner" (i.e., Ms. Luna) (Ramos Dep. at 19:3-23)—and who physically handed Mr. Flores Moreno his pay. (Pl. 56.1 St. ¶ 31.) Mr. Ramos states, however, that Ms. Luna "had the final say on hiring and firing workers and in determining the amount she would pay them and in what method she would pay them," and that it was she who assigned both Plaintiffs their work schedules. (Ramos Decl. ¶¶ 3, 12.) Mr. Ramos also states that Ms. Luna prohibited him from working at the Market at all between June and October 2016. (Id. ¶ 14; accord Declaration of David Garcia dated October 26, 2020 ("Garcia Decl.") (Docket Entry No. 88-6) ¶ 4.) David Garcia, an employee who also worked at the Market during Plaintiffs' employment and who corroborates that account, reports that he understood that Ms. Luna "owned the corporation that had the lease on the store," and that it was Ms. Luna who "determined what she would pay me on a weekly basis and how I was to be paid." (Garcia Decl. ¶¶ 2, 4.)

Plaintiffs left their employment at the Market in September 2016. On or about October 21, 2016—the same day the divorce between Defendant Ramos and Ms. Luna was

finalized—JJ Food Market Corp. transferred control of the Market to 153 J and J Food, a newly-formed entity incorporated by Mr. Ramos's sister, Maria Ramos.  (Pl. 56.1 St. ¶¶ 1, 28, 33; accord Ramos Decl. Ex. D.)[3]  After the change in control, the Market maintained many aspects of its operation, including its exterior sign, its deli menu, its lease, its food and credit card vendors, and much of its machinery and equipment.  (Pl. 56.1 St. ¶¶ 5-6; 12-22.)  However, neither Plaintiffs nor Ms. Luna remained employed there, and Mr. Ramos took on additional managerial duties previously performed by Ms. Luna.  (Garcia Decl. ¶ 4 ("Maria Ramos comes to the store a few times a month because I understand that she has left Mr. Ramos in charge of the day-to-day operations which previously were performed by Ms. Luna"); accord Pl. 56.1 St. ¶¶ 8-10.)

DISCUSSION

The pending motion is brought pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.  Under Rule 56(a), summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of demonstrating the absence of a material issue of fact, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-52 (1986), and the court must be able to find that, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party."  Marvel Entm't, Inc. v. Kellytoy (USA),

---

[3]     Plaintiffs claim, and Defendants dispute, that Mr. Ramos is also an owner of 153 J and J Food.  (Pl. 56.1 St. ¶ 7 ("Defendant [Ramos] is an owner of [153 J and J Food]"); Ramos Decl. ¶ 19 ("I am not an owner of 153 J and J Food Market Corp.").)  Plaintiffs' Local Civil Rule 56.1 statement contains no assertion, however, that Mr. Ramos had an ownership interest in JJ Food Market Corp., the entity which controlled the Market while Plaintiffs were employed there.

Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)) (internal quotation marks omitted).  A fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted).  "[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

Applying this standard, the Court concludes that Plaintiffs have not met their burden of demonstrating the absence of a material issue of fact as to Defendant Ramos's status as an employer under the FLSA and NYLL, or as to Defendant 153 J and J Food's liability as the successor-in-interest to defaulted defendant JJ Food Market Corp.

Employer Status of Defendant Ramos

Under the FLSA, an "employer" "includes any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d) (Westlaw through P.L. 116-259).  "The Second Circuit has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances[.]"  Tapia v. Blch 3rd Ave LLC, 906 F.3d 58, 61 (2d Cir. 2018) (quoting Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013)).  The "underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees," and four factors are of particular importance to that inquiry: "[w]hether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules

or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Tapia, 906 F.3d at 61 (quoting Irizarry, 722 F.3d at 109 and Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008)).[4]  "No one of the four factors alone is dispositive," Tapia, 906 F.3d at 61 (citation omitted), and because "[t]he question of whether a defendant is an employer under the FLSA is a mixed question of law and fact, with the existence and degree of each relevant factor lending itself to factual determinations . . . individual employer liability is rarely suitable for summary judgment." Alvarado v. GC Dealer Servs. Inc., No. 18-CV-2915 (SJF) (SIL), 2021 WL 66541, at *24 (E.D.N.Y. Jan. 6, 2021) (quoting Berrios v. Nicholas Zito Racing Stable, Inc., 849 F. Supp. 2d 372, 393 (E.D.N.Y. 2012)).

In this case, Plaintiffs submit that Mr. Ramos took certain actions consistent with status as Plaintiffs' employer, including hiring Mr. Flores Moreno, physically paying Mr. Flores Moreno, and providing work orders to unspecified employees. (Pl. 56.1 St. ¶¶ 30-32.)[5] However, Mr. Ramos maintains that he took those actions on behalf of Ms. Luna, that he never worked the same hours as Plaintiffs, and that he was "just another employee" at the Market

---

[4] While the Second Circuit has not resolved "the question of whether the 'economic reality' four-factor test should be applied under the NYLL, courts in this Circuit 'have consistently interpreted the definition of "employer" under the New York Labor Law coextensively with the definition used by the FLSA.'" Cano v. Sushi Chain, Inc., No. 19-CV-3509 (RRM) (LB), 2021 WL 84276, at *4 (E.D.N.Y. Jan. 11, 2021) (quoting Yu Y. Ho v. Sim Enterprises, Inc., No. 11-CV-2855 (PKC), 2014 WL 1998237, at *10 (S.D.N.Y. May 14, 2014)).

[5] While Plaintiffs state in their Local Civil Rule 56.1 Statement—as to which Defendants did not file a compliant, correspondingly numbered counterstatement pursuant to Local Civil Rule 56.1(b)—that "Plaintiff Flores was employed by" Defendant Ramos (Pl. 56.1 St. ¶ 27), the Court does not deem that legal conclusion admitted by Defendants. See, e.g., Wojcik v. 42nd St. Dev. Project, 386 F. Supp. 2d 442, 448 n.5 (S.D.N.Y. 2005) ("where defendants assert legal conclusions in the guise of an undisputed statement of fact, I shall not consider those legal conclusions admitted by plaintiff").

during Plaintiffs' employment there.  (Ramos Dep. at 15:4-6, 15:17-19, 19:3-15, 24:21-25:2.)  Mr. Ramos also asserts that "Ms. Luna had the final say on hiring and firing workers and in determining the amount she would pay them and in what method she would pay them," and that Ms. Luna prohibited him from working at the Market at all between June and October 2016, such that he could not have exerted "operational control" over Plaintiffs' employment.  (Ramos Decl. ¶¶ 3, 14; accord Garcia Decl. ¶¶ 2-4.)  Given these conflicting factual assertions concerning Mr. Ramos's role vis a vis Plaintiffs' employment at the Market, the Court concludes that Plaintiffs have not met their burden of demonstrating the absence of any material issue of fact as to Mr. Ramos's status as Plaintiffs' employer under the FLSA and NYLL.

Successor Liability of Defendant 153 J and J Food

Federal courts sitting in New York employ either a New York common law standard or a "substantial continuity" test in determining whether a defendant may be held liable for a previous employer's labor law violations.  Xue Ming Wang v. Abumi Sushi, Inc., 262 F. Supp. 3d 81, 87-89 (S.D.N.Y. 2017).  Under the common law test, a business buyer is liable for the seller's debts only when "(1) a buyer . . . formally assumes a seller's debts; (2) [the] transactions [are] undertaken to defraud creditors; (3) a buyer . . . de facto merged with a seller; [or] (4) a buyer . . . is a mere continuation of a seller." Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003).  The more liberal "substantial continuity" test "involves consideration of at least three factors: (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; and (3) whether there has been a substantial continuity of business operations." Guangcheng Chen v. Matsu Fusion Rest. Inc., No. 19-CV-11895 (JMF), 2020 WL

6135764, at *4 (S.D.N.Y. Oct. 16, 2020) (citing Abumi Sushi, 262 F. Supp. 3d at 89-90)). Courts may also consider the following additional factors, which are given less weight than the first two "more significant" factors:

> (4) whether the new employer uses the same plant; (5) whether [it] uses the same or substantially the same work force; (6) whether [it] uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether [it] uses the same machinery, equipment, and methods of production; and (9) whether [it] produces the same product.

Diaz v. Slayton One Cleaner Inc., No. 17-CV-1311 (LTS) (KNF), 2018 WL 4935831, at *4 (S.D.N.Y. Oct. 11, 2018) (quoting Bautista v. Beyond Thai Kitchen, Inc., No. 14-CV-4335 (LGS), 2015 WL 5459737, at *5 (S.D.N.Y. Sept. 17, 2015)). Under either test, the party asserting successor liability has the burden of proof. Diaz, 2018 WL 4935831, at *4 (citing Abumi Sushi, 262 F. Supp. 3d at 92); Desclafani v. Pave-Mark Corp., 07-CV-4639 (HBP), 2008 WL 3914881, at *3 (S.D.N.Y. Aug. 22, 2008).

In this summary judgment motion practice, Plaintiffs have not carried their burden of demonstrating the absence of material factual disputes that are relevant to 153 J and J Food's alleged liability as JJ Food Market Corp.'s successor-in-interest. Applying the common law standard, the record, construed in the light most favorable to the Defendants, is insufficient to establish that 153 J and J Food formally assumed JJ Food Market Corp.'s debts, that the transaction was undertaken to defraud creditors, or that 153 J and J Food de facto merged with, or is a mere continuation of, JJ Food Market Corp. See, e.g., Abumi Sushi, 262 F. Supp. 3d at 87-88 (discussing the factors to determine successorship based on de facto merger or status as a mere continuation of the seller, and explaining that continuity of ownership is indispensable to successor liability under either the third or fourth prong). Applying the more liberal "substantial continuity" test, the record contains no evidence relevant to the first two "more significant"

factors under that test: whether 153 J and J Food had notice of Plaintiffs' wage and hour charges prior to acquiring control of the Market, and whether JJ Food Market Corp. has the ability to provide relief.[6]  Application of the remaining factors—which are "essentially a subset of factors to consider in determining whether there was substantial continuity of business operations," Matsu Fusion, 2020 WL 6135764, at *4 n.3 (citation omitted)—yields a mixed result: while the Market's physical operation remained largely unchanged, at least three of its personnel (Plaintiffs and Ms. Luna) left the business, and Mr. Ramos apparently increased his managerial role after the transaction.  Having evaluated the factual record, drawing all reasonable inferences in Defendants' favor and giving greater weight to the first and second factors, the Court concludes that Plaintiffs have failed to carry their burden of establishing 153 J and J Food's successor liability at this summary judgment phase of the proceedings.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is denied.

The parties are directed to meet and confer concerning settlement, and to file a letter directed to the attention of Magistrate Judge Fox by **February 26, 2021**, stating whether they wish to engage in judicially-supervised settlement negotiations, or to be referred to the Court's Mediation Office for mediation, in advance of the final pretrial conference scheduled for June 11, 2021, at 2:00 p.m.  (See Docket Entry No. 93.)  Absent a settlement, the parties must

---

[6]   The fact of JJ Food Market Corp.'s default in this case, without more, is not evidence of that entity's inability to provide relief.  See Feng Chen v. Patel, No. 16-CV-1130 (AT) (SDA), 2019 WL 2763836, at *5 (S.D.N.Y. July 2, 2019) ("Turning to the second factor, the ability of the predecessor to provide relief, Plaintiffs argue, without citing case law, that it is met because Defendants' predecessors, the Defaulting Defendants, have defaulted.  This too is insufficient to satisfy Plaintiffs' burden.").

make their pre-conference disclosures and submissions in accordance with the schedule set forth in the Pretrial Scheduling Order filed contemporaneously herewith.

This Memorandum Order resolves Docket Entry No. 73.

SO ORDERED.

Dated: New York, New York
       February 17, 2021

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge